Good morning, your honors, and may it please the court. My name is Mark Ebert, and I represent Mr. Gray in the first matter on the docket. I'd like to start by saying that the parties agree on one thing, that the question of exhaustion is determined by the federal courts based on whether the federal standards of exhaustion are met, and that's based on this court's decision in Kim v. Villalobos. And that standard, at least in relevant part, only requires that a petitioner make a fair presentation of his claims by putting the state Supreme Court on notice of his claims. Beginning with Claim 4, the one about not allowing the jury to see the petitioner's ear, during jury deliberations, the state admits in footnote 6 to its brief that Mr. Gray raised the claim that he was not present and that he didn't consent to denying the jury's request to see his ear in the state Supreme Court habeas petition. So the sole basis for finding that claim unexhausted then, and this was argued in one paragraph in the state's opposition to the, or the state's motion to dismiss, was that even though he said he was not present at jury deliberations in both the state and federal habeas petitions, and he backed it up with the transcript in which his trial counsel waived his presence at that hearing, and that's located at Exhibit 7 to the habeas petition, where counsel, where the court asks, you don't need to talk with your client to get through okay, and his counsel says, I'm waiving my client's appearance. The sole basis for saying that's unexhausted was that at another point in the petition, Mr. Gray, who was pro se, said that he was present during the entire trial. Well, let's suppose that he had what? He had five grounds for ineffective assistance. So let's suppose some of them, four, maybe five, on the severance issue, let's suppose those were fairly presented, but the other three weren't. Are you suggesting that it's okay to then proceed on the two out of the five? Well, first of all, let's make clear. I was talking about Claim 4. You're asking me about Claim 2, which is the IAC claim. Is that correct, Your Honor? Yeah. Okay. Well, I thought those were all part of the IAC. No. The first issue that I was referring to was his right to be present. Oh, right to be present. I'm sorry. Okay. And I'll move to Claim 4 if you want me to, but I just wanted to make clear that we're talking about a different claim. As to Your Honor's question on Claim 2, my understanding was that only one of the five grounds was claimed to be unexhausted, and that was the failure to investigate, to call witnesses, to make proper objections regarding the nonexistent search warrant. That was the federal petition Claim 2. In Claim 1, he also said that he didn't learn, and Claim 1 was exhausted, there's no dispute about that, that they didn't learn until either just before or during trial that the state was going to raise that issue. That is, the 2005 drug charge, which had never been tried, and I don't think had even been charged at that point. And that was where the warrant came from. In the state habeas petition, he said he failed to object, or his attorney failed to object, and investigate, and that he had no opportunity to get witnesses regarding the illegally obtained evidence in violation of the Fourth Amendment. I believe that that, number one, I believe that that's more than enough to put the state Supreme Court on notice as to what he was talking about. He was talking about the nonexistent 2005 search warrant in both cases. I don't know how you list, how a pro se petitioner in prison, no investigator, whatever, is going to list witnesses to the nonexistence of something. But even if he could, again, this is enough to put the state Supreme Court on notice. And, you know, I mean, that's what the evidentiary hearing that he requested and was denied is for. Also, Claim 2, and again, I believe that it's only one aspect, not three of the five. That's certainly my understanding that they claimed it was unexhausted. Claim 2 has to be read in conjunction with Claim 1, which everyone agrees was exhausted. And Claim 1 alleged that the petition was taken by surprise when right before he trialed, he learned that the state was going to use the uncharged drug prosecution against him. And his counsel offered to stipulate to the facts of the warrant. Again, a warrant which Claim 2 says was nonexistent. This Court's jurisprudence in Wooten v. Kirkland says that a claim is exhausted if it is sufficiently related to another claim in the same petition which is exhausted. And, again, we have two claims, Number 1 and Number 2, which read together, I think, clearly explain what was intended in this case. The state keeps citing cases saying, well, you know, the judge doesn't have to read Claim 1 in order to understand Claim 2. But none of the cases the state cites say that. What they say is you don't have to go outside the four corners of the habeas petition. Here, everything was contained within the habeas petition. You know, this isn't a case where the judge who was ruling on exhaustion had to look at a state court, part of the state court record that wasn't attached or something like that. What's the bottom line position you want this panel to adopt regarding your argument? Number 1, that the state supreme court was fairly put on notice as to what the claims were in both of these instances. And, Number 2, that you have to read the allegedly, and I don't think that's even arguable, to be honest, as far as Claim 4. We always want you to be honest. Yeah, of course. I think in Claim 4, it's pretty clear that when he was talking about jury deliberations where the record shows, and he attached the portion of the record that shows he wasn't present, that he was referring to the trial where he said, everyone pointed at me and identified me as something different from the jury deliberations where he was not present. And the other thing is that I think you have to read these claims in conjunction with each other, which Wooten v. Kirkland says that you do, that you can do, and there's no authority that I'm aware of that was cited by the state that says you can't. So I think it's important to look at the same habeas petition as a whole. And unless the Court has other questions, I'd like to save my last two minutes for rebuttal. Right. All right. Good morning. May it please the Court. David Wilden, Deputy Attorney General, for the Respondent. The California Supreme Court denied Petitioner's state habeas petition the citations to Waltrius and Duval. Waltrius, as this Court has recognized on a number of occasions, stands for the proposition that a claim was raised and denied on direct appeal. So that Waltrius citation only applies to the claims that were raised on in a position for review. Those were already denied on the merits. Duval is states the proposition that it was. So is that one of these postcard denials? Yes, Your Honor. So we'll assume, then, that somebody in the State Supreme Court thoroughly reviewed these files and studied all that before the postcard went out, right? Yes, Your Honor. When the State Supreme Court simply denies a petition without a citation, we assume it's on the merits. When they have citations as we have here, we look at those citations to understand what the rulings are. The Waltrius applies to the claims that were denied on direct review. The Duval citation is that a claim hasn't been pled with sufficient particularity. Well, who looked at it? Who looked at it at the Supreme Court level? Well, Your Honor, I believe that it has to be agreed to by four justices of the State Supreme Court. They all looked at it and they sent a postcard out. It is a postcard denial, as this Court recognizes. It says, Petition denied. See Inouye Waltrius and people via Duval. You see, we need to thank you for that process because that process has been going on for a long, long time because that's added considerable work to our schedule, and so it keeps us very busy and it's job security. And because the State doesn't do its job, we have to do it for them. You know what I'm saying? Yes, Your Honor. I understand the point you're making. The Ninth Circuit has made it clear on many occasions that the preference would be for the State Court to be more explicit in its habeas denials. And I believe the California Supreme Court is aware of that. It's simply a separate court system. This is how they choose to decide the non-capital habeas petitions, and that's what we have to deal with. Well, it's job security for you, too, because then you have to come in and try and explain what we're doing. Can I follow? I just want to get clear. What is your understanding of the unexhausted issues with respect to ineffective assistance of counsel? Certainly, Your Honor. In the ineffective assistance of counsel claim before the California Supreme Court, Petitioner discussed that his counsel did not fully investigate something and that he was denied the right to call witnesses, that his counsel should have called witnesses. He doesn't explain what particularly his counsel didn't investigate in that claim, nor does he explicitly explain what witnesses his counsel should have called. Did he? Were there others? I understand. Let me just say, here's what I thought they were. Counsel failed to make timely objections, failed to conduct a proper investigation, which you've mentioned, failed to object to illegally obtained evidence, failed to request severance of the trial, and then made an error during deliberation by not objecting on the here demonstration. Does that accord with what you think comprises IAC claims? Well, Your Honor, I haven't sat down and divided it into five claims. I do know that generally when we see the Duval citation, it does apply to the ineffective assistance counsel claim for stricter claims. And in particular, it generally applies to those claims where there's investigation that's counsel has claimed not to have done and witnesses. And he does talk here about counsel failed to perform investigations. And that's particularly what I'm looking at as not being alleged with particularity. I would note on this ground that when he got to federal court six months later and I filed a motion to dismiss on this ground, the petitioner responded by submitting affidavits and declarations to the district court, showing that he could actually plead that with more particularity and show the witnesses and the investigation that could have been his counsel, he thinks his counsel should have done. Had he presented that kind of information to the California Supreme Court, I don't think we'd be looking at Duval's citation in relation to the IAC claim. So do you think all of these claims should be viewed as unexhausted or exhausted to the extent Duval has noted? Well, to the extent that petitioner talks about a failure to investigate, a failure to call witnesses, I think Duval says that he should have gone back to the State Supreme Court, resubmitted it with plain English and explained what his counsel did wrong and why he's entitled to habeas relief. And that would have given the State Supreme Court a fair opportunity to rule on the merits of those claims. Without those declarations they submitted to the federal court six months later, the State Supreme Court didn't have the opportunity to look at those and understand precisely what he was claiming. So what about the right to be present claim? Was that exhausted? The right to be present claim was not presented in the petition for review, although the failure of the trial court to let the jury view his ear was. It was then thrown in at the end of the claim for having to do with the jury viewing his ear. It's a little confusing the way he stated that claim. It's not clear whether he's talking about he was denied the six-minute right to be present for him to be present when the jury reviews his ear or at the conference, if you could even call it that, the conference where the trial court made the decision not to let the jury view his ear. It would be a very simple thing for the petitioner to spell that out in plain English. And for that reason, I think the Duvall citation does apply to that small portion of ground four. Well, he clearly talks about in his complaint, in his petition, about, in other words, it's clear he wanted to be there when there was the discussion of whether or not the jury could see the demonstration, take a look at his ear, right? Well, he has approximately eight or nine lines discussing his right to be there. Yeah. The trial court's error in not letting the jury view his ear. And then he throws in a couple of lines at the end that his due process rights were violated by the additional right to be present at any stage of the proceeding. And it's not clear entirely if he's relating to the, what he pled in the first eight lines or the final line, which is discussing the conference at which that decision is made. And that's really just the only small point of ground four that was not in the petition for review. Right. So why isn't that claim exhausted? The Supreme Court could have figured out from that his claim, couldn't it? Well, Your Honor, I don't, I believe the Infective Assistance Council claims are a little bit clearer as far as the exhaustion argument. But it's not 100 percent clear what he's claiming. What do you mean 100 percent clear? Is that the standard in a pro se plaintiff? No, it isn't, Your Honor. We do give pro se litigants a little bit of a benefit of the doubt because they can't, they don't have legal training. But here, if you look at the heading of ground four as submitted to the California Supreme Court, it doesn't talk about the right to presence, the Sixth Amendment right. But he does talk about it in the narrative, right, under that heading? Yes, Your Honor. Well, okay, right to be present, that's a federal constitutional right, correct? Yes. And he's talking about the year, right? And there may be two places where he wasn't there. You're suggesting one was at a conference and the other was some other phase. Why isn't that fairly presented? The only reason, Your Honor, why it's not fairly presented is because he could have made it more explicit whether he was claiming that he was denied a Sixth Amendment right to be present at the time the jury could have viewed his year or at the time that the trial court denied the motion to allow the jury to view the year. So if one were to look at it and conclude that it was good enough for pro se, then it would be exhausted, is that correct? Yes, Your Honor. Okay. Thank you. I realize my time is running out here. I just want to make one quick point, which is the Wooten case. You're actually over time. Over time. But it's up to Judge Fragerson. You look like a nice fellow. The Wooten case, I don't believe, supports Petitioner's position. It was a case having to do with a cumulative error claim, and this Court found that the cumulative error claim was not included and intertwined in the other claims that were presented to the California Supreme Court. And Lunesbury being the only case that supports that intertwining theory sort of stands alone, and it has to do with competency and the fact that when you present a procedural argument of competency and a substantive argument, that both you process arguments. So that's a very unique situation. I don't think it applies here. Unless there are further questions, I would submit the matter. All right. Very well. Thank you. The matter, you used up your two minutes. Oh, you're right. You're right. Two minutes and eight seconds. Two minutes and eight seconds. Can you clarify for me? I may be operating on a misapprehension, but my understanding that the essence of his ineffective assistance counsel was, as I listed, that there were these ñ it comprised various claims. And let me read them again. Failed to make timely objections. Failed to conduct a proper investigation. Failed to object to legally obtained evidence. Failed to request severance. And then the error related to the error. And that that was all what was part of an overarching IAC claim. Right. And having heard your explanation of that to opposing counsel, I now understand what you meant when you asked me. But my answer doesn't differ too much, which is that, number one, in the state petition, Mr. Gray, again, pro se, argued that all those things were not done in the context of failing to object to illegally obtained evidence under the Fourth Amendment, which is more than enough to put the state court on notice of, you know, what is the illegally obtained evidence under the Fourth Amendment. In the federal petition, he points out that the warrant which was sprung on him during trial was nonexistent. So I do think that there's enough there, more than enough there, for that purpose. And secondly, again, those things are encompassed within Claim 1, and those Claim 1 and Claim 2 are sufficiently related under Wooten v. Kirkland or Kirkland v. Wooten, whichever it is, I think, in order to make them exhausted. And Claim 1 was exhausted, according to everyone. There was no dispute about that. So now that I understand what Your Honor is saying, I would simply say that the answer is the same. It simply involves what I just said. And my last point in my last two seconds was that there is no allegation that Duval, the sites of Duval says that all of the claims weren't exhausted. There's agreement by the district court and by the state that some of the claims were exhausted in spite of the Duval site. And furthermore, the postcard denial citing Duval doesn't give Mr. Gray, the pro se petitioner, any direction as to what to do. It doesn't say denied, but come back when you learn to write better. It just says denied. And Duval itself doesn't say anything about coming back after you learn to write it better. That's a different case that couldn't expect the pro se petitioner. Thank you, Your Honor. Thank you very much. Thank you.
judges: Daniel, Pregerson, Fisher